# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs January 21, 2015

## EVERETT SPENCER BARNETTE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Sullivan County**
**No. S57499      Robert H. Montgomery, Jr., Judge**

**No. E2014-00902-CCA-R3-CD - Filed February 13, 2015**

The Defendant, Everett Spencer Barnette, appeals as of right from the Sullivan County Criminal Court's denial of his motion to withdraw his nolo contendere pleas. The Defendant contends (1) that he received ineffective assistance from his trial counsel; and (2) that his pleas were not knowingly, voluntarily, and understandingly entered. Following our review, we conclude that the Defendant's pleas were not knowingly, voluntarily, and understandingly entered. Accordingly, we reverse the judgments of the trial court and remand the case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Reversed; Case Remanded**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

L. Dudley Senter, III, Bristol, Tennessee, for the appellant, Everett Spencer Barnette.

Herbert H. Slatery, III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Barry Staubus, District Attorney General; and William B. Harper and Teresa Ann Nelson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

In June 2010, the Defendant was charged with three counts of rape of a child, three counts of statutory rape by an authority figure, three counts of aggravated statutory rape, four counts of incest, and one count each of especially aggravated sexual exploitation of a minor, sexual exploitation of a minor, and solicitation of a minor. See Tenn. Code Ann. §§ 39-13-

506(c), -13-522, -13-528, -13-532, -15-302, -17-1003, -17-1005. While those charges were pending, the Defendant was taken into federal custody. On December 27, 2011, the Defendant entered a guilty plea in the United States District Court for the Eastern District of Tennessee to one count of interstate transportation of a minor with intent to engage in criminal sexual activity. See 18 U.S.C.A. § 2423(a) (West 2013). The Defendant was sentenced to a term of 264 months to be served in the United States Bureau of Prisons (BOP).

After the resolution of the Defendant's federal case, he was remanded back to state custody to resolve the charges listed above. On September 26, 2013, the Defendant pled nolo contendere to one count of aggravated statutory rape and one count of incest. The State provided the following factual basis for the Defendant's plea agreement:

> [B]etween April 12, 2009 and June 2, 2009, the proof would be that the [D]efendant engaged in sexual penetration of [the victim, who,] at the time, was seventeen years of age and more than ten years younger than the defendant and . . . that during that time [the victim] was [the Defendant's] stepdaughter.

In exchange for his pleas, the Defendant was given an effective six-year sentence to be served concurrently with his federal sentence. The State also agreed not to charge the Defendant with any other offenses regarding the victim or an assault the Defendant was alleged to have committed while he was in the Sullivan County Jail.

At the plea submission hearing, the Defendant testified that he had read and reviewed the plea agreement with trial counsel. The Defendant testified that he had signed the plea agreement and did not have any questions about it. The Defendant also testified that he understood that the trial court did not have any control over his federal sentence. The trial court explained to the Defendant as follows:

> Now, let me also mention, too, of course I can't tell the federal judge what to do. I can't tell the Federal Bureau of Prisons [] what to do. All I can do is what I have in my court and my intent in my court is to have your sentence be concurrent with your federal sentence. Okay, but it's possible that the federal people, because your case is still on appeal, can make . . . some decision different than that but I don't have any control over them.

When the trial court explained that the Defendant would receive credit "for any time he's already spent in custody," the Defendant asked if the credit would go toward his federal or state sentence. The trial court explained that the Defendant was receiving "a state sentence" and that federal authorities were "not involved in making any determination about when [he would] have satisfied the six years." At the conclusion of the plea submission

-2-

hearing, the trial court stated as follows, "this sentence is concurrent with your federal sentence and, of course, you've waived a probation or alternative sentencing hearing, so I order you to serve that sentence in the Tennessee Department of Correction [(TDOC)]."

On October 23, 2013, the Defendant filed a pro se motion to withdraw his nolo contendere pleas. Counsel was appointed, and an amended motion was filed alleging that his pleas were not knowingly, voluntarily, and understandingly entered because the Defendant believed "that he would be transferred to a Federal facility after his plea" submission hearing. Instead, the Defendant was transferred to a TDOC facility. The amended motion also alleged that the Defendant's trial counsel was ineffective because he assured the Defendant "that he would not serve any incarceration in a Tennessee prison." On March 27, 2014, the trial court held a hearing on the Defendant's motion.

At the hearing, the Defendant testified that he was arrested on December 24, 2009, and placed in the Sullivan County Jail. In October 2010, the Defendant was charged in a federal indictment and transferred to a federal holding facility. The Defendant testified that an Assistant Federal Public Defender was appointed to represent him and that she "felt that she could get a deal worked out between the federal case and the state case" which would allow him to serve his sentences in both cases "at the same time in a federal facility." According to the Defendant, his federal public defender negotiated an agreement with the United States Attorney and the state prosecutor that if he plead guilty in both federal and state court, "the [S]tate would in fact run the sentences concurrent with the federal sentence."

The Defendant testified that, with an agreement secured that his federal and state sentences would be served concurrently, he reached a plea agreement with the United States Attorney. The Defendant further testified that the United States District Judge gave him "credit all the way [back] to" December 24, 2009, even though he had only been in federal custody since October 2010, "to make sure that the state and fed[eral sentences] would be concurrent." According to the Defendant, his federal public defender told him that he would be returned to state custody "long enough for [him] to . . . sign a plea . . . and then [he] would go into federal custody again." The Defendant was then transferred back to state custody and trial counsel was appointed to represent him on the state charges.

The Defendant testified that trial counsel approached him with a plea offer from the State where he would plead guilty "to all the charges" and serve twenty years "concurrent with [his] federal sentence." The Defendant testified that he refused to accept the offer because he was "not guilty of those things." The State then proffered an agreement where the Defendant would plead guilty to "like three charges" and receive a twelve-year sentence. The Defendant rejected that offer as well and claimed that he was prepared to take his case to trial. The State then offered the six-year deal "five days before [the Defendant] was to go

to trial." The Defendant testified that when he was negotiating with the State, he would not take "anything unless it was concurrent with [his] federal sentence so [he] could go to the feds."

The Defendant claimed that trial counsel promised him that he would serve his sentences in a federal facility. However, the Defendant admitted that in a letter from trial counsel regarding the twelve-year deal, trial counsel stated that the Defendant would "likely" serve his sentences in a federal facility upon acceptance of the plea agreement. The Defendant also admitted that when trial counsel informed him about the six-year deal, trial counsel stated that he "should be going on to the feds" after two or three weeks. Instead, the Defendant was placed in a TDOC facility and has remained in its custody since the plea submission hearing. The Defendant's attorney informed the trial court that he had spoken to someone from the BOP and that "more likely than not" the Defendant would get credit on his federal sentence for the time spent in TDOC, but it was "not an absolute[] yes."

The Defendant testified that he would not have accepted the plea agreement if he had known that he would have to serve his sentences in a TDOC facility rather than a federal one. The Defendant admitted that the plea agreement contained no mention of where he would serve his sentences. The Defendant testified that he "was just under the assumption that" he would serve his sentences in a federal facility because they were concurrent. The Defendant also testified that during the plea submission hearing, he felt it was "implied" that he would be serving his sentences in a federal facility despite the fact that the trial court stated that it had no control over the BOP and ordering that his sentence be served in TDOC.

At the conclusion of the hearing, the trial court denied the Defendant's motion to withdraw his nolo contendere pleas. The trial court stated that the Defendant was "a very intelligent person" and that it felt the Defendant "understood the criminal justice process." The trial court further stated that the Defendant was "apparently" being given credit towards his federal sentence for the time he had spent in TDOC. The trial court found that at no point, was the Defendant ever promised to serve his sentence in a federal facility. Therefore, the trial court concluded that there was no manifest injustice present to warrant allowing the Defendant to withdraw his pleas.

ANALYSIS

The Defendant contends that the trial court abused its discretion in denying his motion to withdraw his nolo contendere pleas. The Defendant argues that his trial counsel was ineffective for assuring the Defendant "that he would not serve any incarceration in a Tennessee prison." The Defendant further argues that his pleas were not knowingly, voluntarily, and understandingly entered because he believed "that he would serve his

-4-

sentence in a [f]ederal facility." The State responds that the Defendant was not promised by trial counsel that his sentences would be served in a federal facility and that there was "no mention of a promise or an agreement that the [D]efendant would serve his sentence in a federal facility in the plea document."

A defendant may seek to withdraw a plea for any fair and just reason before the trial court imposes the sentence. Tenn. R. Crim. P. 32(f)(1). Once the trial court imposes the sentence but before the judgment becomes final, "the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice." Tenn. R. Crim. P. 32(f)(2). Our supreme court has defined "manifest injustice" to include the following circumstances:

> (1) [T]he plea was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, [373 U.S. 83 (1963)], and this failure to disclose influence[d] the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

State v. Crowe, 168 S.W.3d 731, 742 (Tenn. 2005) (internal footnotes and quotation marks omitted). Additionally, where "there is a denial of due process, there is a 'manifest injustice' as a matter of law." Id. at 743 (quoting State v. Davis, 823 S.W.2d 217, 220 (Tenn. Crim. App. 1991)).

However, a defendant "does not have a unilateral right to withdraw a plea." Crowe, 168 S.W.3d at 740. For example, "a defendant's change of heart about pleading guilty or a defendant's dissatisfaction with the punishment ultimately imposed does not constitute manifest injustice warranting withdrawal." Id. at 743. "Whether a defendant should be permitted to withdraw a plea is a matter addressed to the sound discretion of the trial court." Id. at 740. Accordingly, we review a trial court's decision regarding a motion to withdraw a plea for an abuse of discretion. Id. A trial court abuses its discretion when "the record lacks substantial evidence to support the trial court's conclusion." Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the defendant must also show that but for the substandard

performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In the context of a plea, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Here, there is no evidence, beyond the Defendant's own testimony, that trial counsel misled the Defendant by promising or assuring the Defendant that he would serve his sentences in a federal facility. Rather, a letter from trial counsel to the Defendant discussing one of the proposed plea agreements stated only that it was "likely" that he would serve his sentences in a federal facility. There was nothing in the Defendant's plea agreement stating that his sentence would be served in a federal facility, and the trial court warned the Defendant at the plea submission hearing that it could not tell the BOP "what to do." Accordingly, we conclude that the proof does not support the Defendant's claim that trial counsel was ineffective for misleading the Defendant about where he would serve his sentence.

However, with regard to the knowingness of the defendant's pleas, we are forced to reach a different conclusion. Before a plea can be accepted, there must be a showing in the trial court that the plea was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969). This includes a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542. "If a plea of guilty is based on a misrepresentation, including unfulfilled or unfulfillable promises, then the guilty plea cannot stand." Bernard Frazier v. State, No. W2013-00187-CCA-R3-PC, 2014 WL 1410285, at *6 (Tenn. Crim. App. Apr. 10, 2014) (citing Brady v. United States, 397 U.S. 742, 755 (1970)).

Both the Defendant and the State address their arguments on this issue in terms of whether the plea agreement required the Defendant to serve his sentences in federal custody rather than in TDOC. However, the dispositive issue is whether the fact that the Defendant

is currently in state custody will affect the concurrent nature of his sentences. It is clear from the plea agreement, the transcript of the plea submission hearing, and the testimony at the hearing on the motion to withdraw the pleas that the Defendant's pleas were conditioned on his state sentences being served concurrently with his previously imposed federal sentence. Despite the fact that the federal court gave the Defendant pre-trial jail credit to the date of his arrest on the state charges, the federal judgment makes no mention of concurrence with the state sentences because the state sentences were not imposed at the time the federal judgment was entered. Put another way,

> the problem with the [Defendant's] present incarceration in state custody is not so much that he is in a state prison contrary to his wishes but that there is no guarantee that upon completion of his term he will not be taken into federal custody and required to serve his entire federal sentence.

Frazier, 2014 WL 1410285, at *7. In effect, the Defendant could serve consecutive sentences, contrary to the intent of his nolo contendere pleas.

This court has previously addressed similar situations and reached the same result. See State v. Virgil, 256 S.W.3d 235 (Tenn. Crim. App. 2008); Frazier, 2014 WL 1410285; Joseph T. Faulkner v. State, No. W1999-00223-CCA-R3-PC, 2000 WL 1671470 (Tenn. Crim. App. Oct. 17, 2000); Derrick E. Means v. State, No. 02C01-9707-CR-00248, 1998 WL 470447 (Tenn. Crim. App. Aug. 13, 1998). The problem lies with dual sovereignty, in that "[n]either sovereign controls the other's proceedings." Means, 1998 WL 470447, at *5. As such, once the Defendant completes his state sentence "he would have no avenue for forcing the federal government to give him credit for time served in a state penitentiary when such was not on his federal judgment." Frazier, 2014 WL 1410285, at *7. Accordingly, we conclude that the Defendant's pleas were not knowingly and voluntarily entered because the promise of concurrent sentences was a direct inducement for the pleas. Therefore, a manifest injustice is present, and the trial court abused its discretion in denying the Defendant's motion to withdraw his nolo contendere pleas.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are reversed, and this case is remanded to the trial court for further proceedings consistent with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE